*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-386

JANUARY TERM, 2011

In re T.H., Juvenile

}
}
}
}
}
}
}
}

APPEALED FROM:

Superior Court, Addison Unit
Family Division

DOCKET NO. 24-5-09 Anjv

Trial Judge: Cortland Corsones

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights with respect to her child, T.H.  We affirm.

The trial court's fifty-three-page decision details the involvement over the years of the Vermont Department for Children and Families (DCF) with mother—who has longstanding and serious mental health issues—and her six children.  The five other children have all been subject to children in need of care or supervision (CHINS) proceedings.  In December 2006, mother's two oldest children (born in September 2000 and March 2003) were taken into DCF custody due to concerns regarding mother's emotional stability.  The ensuing CHINS case was resolved by transferring custody of those children to their biological father subject to certain conditions, including counseling for both parents and the children.  Mother and the father now share custody through a domestic relations case.  The third child was a "failure to thrive" baby who suffered from numerous suspicious and untreated injuries, including rib fractures, bruising around the face and neck, and a skull fracture.  Mother gave differing and unsatisfactory explanations for the injuries.  The fourth child was taken into DCF custody as a newborn because of the severity of the unexplained injuries to the third child.  Eventually, the parents voluntarily relinquished their rights to those children.  In April 2008, a CHINS proceeding commenced for the newborn fifth child based on the parents' past abuse of the child's siblings.  The child was briefly returned to the parents' care, but was returned to DCF custody in November 2008 after mother gave conflicting explanations for suspicious injuries to the child, including a fractured leg and hemorrhaging under the eye.  Although mother had generally thwarted DCF's efforts to assess her mental health needs over the years, she engaged in counseling in July 2009 shortly before the termination hearing involving her fifth child, only to quit the counseling once the court granted termination of parental rights.  This Court later affirmed that termination decision.  See In re E.H., No. 2009-401, 2010 WL 711967, at *3 (Vt. Feb. 25, 2010) (unpub. mem.).

Mother's sixth child, T.H., the subject of this case, was also taken from mother and the father upon the child's birth in May 2009 due to the parents' history of abuse.  Following a contested merits hearing in June 2009, the family court adjudicated T.H. CHINS.  The disposition case plan called for reunification or termination of parental rights.  In November 2009, the court suspended visitation between mother and T.H. based on mother's erratic and

troubling behavior—and T.H.'s consequent distress—during visits. Notwithstanding having received repeated notices from DCF and the court that mental health treatment was a prerequisite to reinstating visits, mother did not re-engage in mental health counseling until March 2010, and even then continued to deny DCF access to treatment information that would allow the Department to assess her needs and progress. DCF filed a termination petition in January 2010. Hearings were held over two days in September 2010, and the family court issued its termination order on October 1, 2010.

On appeal, mother argues that the evidence does not support the family court's conclusion that she will be unable to resume her parental duties with respect to T.H. within a reasonable period of time. According to mother, because there was no evidence either that she would never be able to recover from her mental illness or that T.H. needed permanency immediately, the court's conclusion that she would be unable to resume her parental duties within a reasonable period of time cannot stand. We find no merit to this argument. Notwithstanding mother's suggestion to the contrary, the court was not required to make findings on what amount of delay would result in harm to T.H. The court acted well within the law and the evidence in this case in deciding not to postpone permanency for an infant who had spent her entire sixteen months of life in foster care while mother continued to have no present ability, and a doubtful future ability, to parent the child. The undisputed evidence demonstrated that (1) mother had longstanding, serious, and untreated mental health issues, which had contributed significantly to the abuse and neglect of her children over several years; (2) over that time, mother had resisted entering and remaining in treatment for those issues and had refused to allow DCF access to treatment information that could have helped the Department assess and address her mental health needs; (3) apart from one evaluation, mother had not seen T.H. since November 2009 because of the risks she posed to the child, with whom she has no parental bond; (4) mother is not able to parent T.H. at this time, and, given her track record, the prospects for her being able to do so in the near future are not good, to say the least; and (5) T.H. has been in foster care awaiting permanency her entire life. In short, the evidence overwhelmingly supports the court's termination order. See In re G.S., 153 Vt. 651, 652 (1990) (mem.) (noting that as long as family court applied proper standard, its findings on appeal will not be disturbed unless clearly erroneous, and its conclusions will be upheld if supported by those findings).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Denise R. Johnson, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice